Robert J. Campos #011817
ROBERT J. CAMPOS
& ASSOCIATES, P.L.C.
51 East Lexington Avenue
Phoenix, AZ 85012
Telephone (602) 222-3440
Facsimile (602) 595-9683
E-mail info@robertjcampos.com

Attorney for Plaintiff-Appellant

IN THE UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| NOOR JEHANGIR,<br>Plaintiff-Appellant,<br>vs.<br>DANIEL EAST, et al.,<br>Defendants-Appellees, | Ninth Circuit<br>Case No.: 25-7755<br><br>Arizona District Court<br>Case No.: 2:24-CV-03030-DJH-DMF<br><br>APPELLANT'S OPENING BRIEF |

**CORPORATE DISCLOSURE STATEMENT**

Pursuant to Federal Rule of Appellate Procedure 26.1, Plaintiff-Appellant Noor Jehangir is an individual and not a corporation; no disclosure is required.

# TABLE OF CONTENTS


- Table of Authorities……………………………………………………………4
- Statement of Jurisdiction…………………………………………………..…5
- Statement of the Issues………………………………………………………5
- Statement of the Case……………………………………………………….5
- Summary of the Argument………………………………………………...8
- Standard of Review…………………………………………………………9

- Argument…………………………………………………………....……9

  - I. The District Court Erred by Dismissing Plaintiff's First Amended Claim…………………………………………………..…………..9

    - A. The Fourth Amendment Protects Against Gratuitous Observation or Recording.
    - B. Federal Precedent Requires Legitimate Justification.
    - C. The District Court Misapplied the Clearly Established Law Standard.
    - D. The District Court's "No Identical Precedent" Standard Is Contrary to Law.
    - E. The District Court Ignored Closely Analogous and Highly Persuasive Precedent.
    - F. The Officers Violated Tempe Police Department Body Camera Policies.
    - G. The Error Was Not Harmless.

  - II. The Right Was Clearly Established; Qualified Immunity Was Improper……………………………………………………………..17

  - III. Additional State Law and Policy Violations……………………19

  - IV. The Police Officers Violated A.R.S. § 13-3019, and Neither the Law Enforcement Exception, a "Surreptitious" Requirement, nor the District Court's Hospital Reasoning Excuse Their Conduct……..…20

    - A. Elements of A.R.S. § 13-3019.
    - B. The Officers' Conduct Satisfies Every Element of the Offense.

- C. The Law Enforcement Exception Does Not Apply.
- D. The District Court Erred by Adding a "Surreptitious" Requirement.
- E. The District Court Erred in Finding No Expectation of Privacy in a Hospital Setting.
- F. Policy and Precedent Support Plaintiff's Position.

- Conclusion……………………………………………………………27
- Statement of Related Cases……………………………………………..27
- Certificate of Compliance
- Certificate of Service

# TABLE OF AUTHORITIES

Cases:


- Schmerber v. California, 384 U.S. 757 (1966)
- Bell v. Wolfish, 441 U.S. 520 (1979)
- York v. Story, 324 F.2d 450 (9th Cir. 1963)
- Byrd v. Maricopa County Bd. of Supervisors, 845 F.3d 919 (9th Cir. 2017)
- Ioane v. Hodges, 939 F.3d 945 (9th Cir. 2018)
- Sepulveda v. Ramirez, 967 F.2d 1413 (9th Cir. 1992)
- Hope v. Pelzer, 536 U.S. 730 (2002)
- Ashcroft v. Iqbal, 556 U.S. 662 (2009)
- Anderson v. Creighton, 483 U.S. 635 (1987)
- Ashcroft v. al-Kidd, 563 U.S. 731 (2011)
- Hansen v. Stoll, 636 P.2d 1236 (Ariz. Ct. App. 1981)
- Cullison v. City of Peoria, 584 P.2d 1156 (Ariz. 1978)
- Young v. Pena, CASE NO. C18-1007JLR-MLP (W.D. Wash. Aug 06, 2019)
- State v. Williams, 144 Ariz. 487, 698 P.2d (1985)


Statutes:


- 42 U.S.C. §1983
- 28 U.S.C. §§131,1343
- 28 U.S.C. §1291
- A.R.S. §13-3019


Rules:


- Fed. R. Civ. P. 12(b)(6)
- Fed. R. App. P. 4(a)

## STATEMENT OF JURISDICTION

The district court had jurisdiction pursuant to 28 U.S.C. §§ 1331, 1343. Final judgment was entered on November 12, 2025. (ER-3) This Court has jurisdiction pursuant to 28 U.S.C. § 1291. The notice of appeal was timely filed on December 12, 2025 (ER-62), pursuant to Fed. R. App. P. 4(a).

## STATEMENT OF THE ISSUES

1. Whether the district court erred in dismissing Plaintiff's complaint where the pleadings and evidence plausibly alleged a violation of the Fourth Amendment by officers who gratuitously recorded Plaintiff's exposed genitalia in a hospital without legitimate law enforcement justification.

2. Whether the right to bodily privacy from such gratuitous observation or recording was clearly established under Supreme Court, Ninth Circuit, and Arizona law.

3. Whether the district court erred in granting qualified immunity at the pleading stage.

4. Whether the officers' conduct also violated Arizona law, including A.R.S. § 13-3019, and Tempe Police Department policy.

## STATEMENT OF THE CASE

Plaintiff Noor Jehangir filed this civil-rights action on November 1, 2024, in the District of Arizona against Tempe Police Officer Daniel East, #26821, and Officer Marra Guajardo, #24084, among others, alleging violations of the Fourth

and Fourteenth Amendments pursuant to 42 U.S.C. § 1983. (ER-194). The district court screened the complaint and ordered Defendants to answer. (ER-191-192).

The original complaint alleged that Plaintiff was arrested on December 8, 2022, for allegations of shoplifting; that during the arrest she exhibited signs of a drug overdose and was transported to Tempe St. Luke's Hospital; that Officers East and Guajardo accompanied her to the hospital; that while she was being treated, her clothing was removed, leaving her covered only by a loose hospital gown; that she was handcuffed to the gurney and semi-conscious; and that while the officers were also physically present, their body cameras were placed in the room at the base of the gurney, intentionally pointed toward Plaintiff's genital area, and continued recording while her gown repeatedly opened to expose her genitalia. (ER-196).

Defendants moved to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) and submitted two body-worn-camera videos under seal. (ER-174, ER-187, ER-173, ER-170). On May 8, 2025, the district court granted the motion, holding that Plaintiff plausibly stated a Fourth Amendment claim but that Defendants were entitled to qualified immunity; the dismissal was without prejudice and with leave to amend. (ER-158, ER-167-169).

Plaintiff filed a First Amended Complaint on June 5, 2025. (ER-83). The amended pleading added allegations that Plaintiff was constantly thrashing; that

both officers remained in the room much of the time; that both officers were aware Plaintiff's genitalia frequently became exposed; that Guajardo repeatedly attempted to cover Plaintiff; that the officers kept their body-worn cameras recording throughout the time they were at the hospital; that after Plaintiff was moved to a smaller room the officers stood at the foot of the bed and later placed their cameras on a trash can near the foot of the bed; and that there was a shelf at the opposite end of the room where the cameras could have been placed to avoid recording graphic images of Plaintiff's genitalia. (ER-85-86).

The First Amended Complaint also quoted portions of Tempe Police Department Order 17.105 regarding avoiding recording exposed groin areas and recording in medical facilities, and alleged that supervisors review BWC videos so others within the department presumably saw the video recording of Plaintiff's genitalia. (ER-86-87). In addition, the First Amended Complaint alleged that Defendants violated Arizona law, specifically A.R.S. § 13-3019, which prohibited the video recording of Plaintiff, without her consent, in a hospital emergency room, where she reasonably expected privacy from having her genitalia recorded on BWC cameras.

Defendants again moved to dismiss. (ER-63). On November 12, 2025, the district court granted the motion and dismissed the action with prejudice on

qualified-immunity grounds. (ER-5, ER-25). Judgment was entered the same day. (ER-4).

## SUMMARY OF THE ARGUMENT

The district court correctly held, at the first dismissal stage, that Plaintiff plausibly alleged a Fourth Amendment violation. The court explained that the location of the search in a hospital room was only one factor, that scope, manner, and justification also mattered, and that construing the facts in Plaintiff's favor there was no need to film Plaintiff in her semi-conscious state to obtain evidence of shoplifting and no apparent law-enforcement interest requiring continuous filming while she was naked, wearing only a loose hospital gown, frequently exposed. (ER-13-15).

The First Amended Complaint added materially more detail, including the officers' awareness of repeated exposure, the officers' placement of cameras at the foot of the bed, the availability of a shelf near the head of the bed, and policy allegations from Tempe Police Department Order 17.105, and the violation of Arizona law, A.R.S. §13-3019. (ER-84-86). Yet, the district court dismissed with prejudice, concluding the right was not clearly established. (ER-25).

The district court erred in dismissing Plaintiff's complaint and granting qualified immunity. The pleadings and evidence plausibly allege a violation of the Fourth Amendment, as established by Supreme Court and Ninth Circuit precedent,

which prohibits gratuitous observation or recording of a detainee's naked body or genitalia without legitimate law enforcement justification. The right to bodily privacy is clearly established, and the officers' conduct was not justified by any legitimate need. The officers' actions also violated Arizona law, department policy, and multiple provisions of the Tempe Police Department's own body camera policy. The judgment should be reversed and the case remanded for further proceedings, or for any other relief the Court deems just and proper.

## STANDARD OF REVIEW

This Court reviews de novo the grant of a motion to dismiss and the determination of qualified immunity. All well-pleaded allegations must be accepted as true and construed in the light most favorable to the plaintiff. Ashcroft v. Iqbal, 556 U.S. 662 (2009)

## ARGUMENT

### I. <u>The District Court Erred by Dismissing Plaintiff's First Amended Complaint.</u>

#### A. The Fourth Amendment Protects Against Gratuitous Observation or Recording.

The district court correctly held, at the first dismissal stage, that Plaintiff plausibly alleged a Fourth Amendment violation. The court explained that the location of the search in a hospital room was only one factor, that scope, manner, and justification also mattered, and that construing the facts in Plaintiff's favor

there was no need to film Plaintiff in her semi-conscious state to obtain evidence of shoplifting and no apparent law-enforcement interest requiring continuous filming while she was naked from the waist down and frequently exposed. (ER-13-15).

The First Amended Complaint added materially more detail, including the officers' awareness of repeated exposure, the officers' placement of cameras at the foot of the bed, the availability of a shelf near the head of the bed, the violation of Arizona law, A.R.S.§13-3019, and policy violations pursuant to Tempe Police Department Order 17.105. (ER-85-87). Yet, the district court dismissed with prejudice, concluding the right was not clearly established. (ER-25).

The Supreme Court has repeatedly recognized that the "overriding function of the Fourth Amendment is to protect personal privacy and dignity against unwarranted intrusion by the State." Schmerber v. California, 384 U.S. 757, 767 (1966). In Bell v. Wolfish, 441 U.S. 520 (1979), the Court held that even pretrial detainees retain Fourth Amendment rights, and that visual body-cavity searches must be justified by legitimate security interests and conducted in a reasonable manner. The Court stated:

> "The test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application. In each case it requires a balancing of the need for the particular search against the invasion of personal rights that the search entails. Courts must consider the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted." Bell, 441 U.S. at 559.

The Ninth Circuit has repeatedly recognized a robust right to bodily privacy, especially regarding exposure of the naked body or genitalia. In York v. Story, 324 F.2d 450 (9th Cir. 1963), the court stated:

> "We cannot conceive of a more basic subject of privacy than the naked body. The desire to shield one's unclothed figure from view of strangers, and particularly strangers of the opposite sex, is impelled by elementary self-respect and personal dignity." York, 324 F.2d at 455.

In York, the police took nude photographs of Appellant. The court in York also grappled with the fact that the case was novel and no precedent was available based on the unusual set of facts in the case. Yet, the court did not hesitate to find that the district court erred in dismissing the complaint based upon the finding that the amended complaint did not state a claim upon which relief could be granted. The court explained:

> This case is novel not only in the respect just mentioned, but also with regard to the precise nature of the arbitrary police action complained of. But, as Justice Brandeis, dissenting in Olmstead v. United States, 277 U.S. 438, 472, 48 S.Ct. 564, 570, 72 L.Ed. 944, long ago made clear, the Constitution is capable of meeting new problems. York, 324 F.2d at 456.

The simple fact that Appellant's case was unique and that no exact precedent was available should not have been a bar and the district court erred in dismissing the complaint.

**B. Federal Precedent Requires Legitimate Justification.**

The Supreme Court and Ninth Circuit have made clear that any law enforcement intrusion on bodily privacy must be justified by legitimate governmental interests and conducted in a reasonable manner. Where the observation or recording is not justified by such interests and is instead gratuitous, harassing, or intended to humiliate, courts have found such conduct to be unreasonable and unconstitutional. Ioane v. Hodges, 939 F.3d 945 (9th Cir. 2018); Byrd v. Maricopa County Bd. of Supervisors, 845 F.3d 919 (9th Cir. 2017).

**C. The District Court Misapplied the Clearly Established Law Standard.**

The district court's conclusion that there was no "existing precedent" showing that the officers' conduct was unlawful, and that the conduct was not "so egregious that no reasonable officer could have believed this conduct was unlawful," fundamentally misapplies the Supreme Court's and Ninth Circuit's standards for qualified immunity. (ER-24). The Supreme Court has repeatedly held that a right is "clearly established" if, at the time of the challenged conduct, "the contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." Anderson v. Creighton, 483 U.S. 635, 640 (1987). The Court has emphasized that "officials can still be on notice that their conduct violates established law even in novel factual circumstances." Hope v. Pelzer, 536 U.S. 730, 741 (2002). The Ninth Circuit has

echoed this, holding that "we do not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." Ashcroft v. al-Kidd, 563 U.S. 731, 741 (2011); Ioane v. Hodges, 939 F.3d 945, 953 (9th Cir. 2018).

**D. The District Court's "No Identical Precedent" Standard Is Contrary to Law.**

The district court's demand for a case with identical facts—i.e., officers recording a semi-conscious, handcuffed detainee's exposed genitalia in a hospital—sets the bar far too high and is contrary to Supreme Court and Ninth Circuit precedent. (ER-19-20) The correct inquiry is whether the unlawfulness of the officers' conduct was apparent in light of pre-existing law, not whether there is a case with the same facts. Hope v. Pelzer, 536 U.S. 730, 741 (2002).

**E. The District Court Ignored Closely Analogous and Highly Persuasive Precedent.**

While no case is factually identical to the observation or recording of a semi-conscious, handcuffed detainee's exposed genitalia in a medical or custodial setting, the Ninth Circuit's reasoning in York v. Story, Byrd v. Maricopa County, and Ioane v. Hodges is directly applicable. In York, the court condemned the gratuitous photographing of a nude, vulnerable victim by law enforcement. In Byrd, the court reversed the district court's dismissal of the complaint alleging a violation of pretrial detainees' 4th and 14th Amendment Rights by allowing female

guards to watch males showering and using the bathroom. In Ioane, the court found a Fourth Amendment violation where an officer intentionally observed a woman urinating, emphasizing the lack of legitimate justification and the clear privacy interest at stake. District courts have applied these principles in closely analogous contexts. Young v. Pena, CASE NO. C18-1007JLR-MLP (W.D. Wash. Aug 06, 2019).

**F. The Officers Violated Tempe Police Department Body Camera Policies.**

The officers' conduct violated multiple provisions of the Tempe Police Department's body camera policy, including but not limited to:

> **17.105E5:**
> "Officers shall not alter (including color), remove, dismantle, or tamper with any hardware and/or software component or part of the BWC device, nor shall any digital evidence obtained be deleted or altered in any manner."
>
> **17.105E8(a):**
> "Members of the public do not have a reasonable expectation of privacy when talking with police officers during the scope of an officer's official duties, even when the contact is in a private residence. When practical, officers should advise subjects they are being recorded.
> If asked by a subject, officers should advise they are being recorded."
>
> **17.105E9(e):**
> "BWCs shall not be activated in places where persons have a reasonable expectation of privacy, such as locker rooms, dressing rooms, or restrooms. This does not preclude an officer from using a BWC to obtain potential

> evidence during an investigation within these types of areas."
>
> **17.105E9(g):**
> "When possible, officers should avoid recording exposed areas of the body that could cause embarrassment or humiliation, such as exposed breast, groin, etc."
>
> **17.105E9(h):**
> "Officers shall not record while in a facility whose primary purpose is to provide medical and/or psychiatric services, unless responding to a radio call involving a suspect who is still present, or when officers are conducting investigatory follow up at the facility.
>
> • Officers shall be aware of patients' rights to privacy when in hospital settings. When recording in hospitals and other medical facilities, officers shall be careful to avoid recording persons other than the suspect."
>
> **17.105F5:**
> **"Officers shall wear the BWC above the midline of their torso and in a position that provides for effective recording."** (Emphasis supplied) (ER-45-62).

Despite these clear policy directives, Defendants removed their body-worn cameras and placed them on a trash can at the foot of Plaintiff's hospital bed, directly aimed at her exposed genitalia. (ER-5). This was not only a violation of the **mandatory** requirement in 17.105F5 to wear the camera above the midline of the torso, but also a violation of the privacy protections in 17.105E9(g) and 17.105E9(h), which require officers to avoid recording exposed areas of the body and to respect privacy in medical settings. (Emphasis supplied)

Defendants offer no rational explanation for removing their cameras, in direct violation of BWC policy 17.105F, and placing them in a position that maximized the recording of Plaintiff's nudity. There was no legitimate law enforcement justification for this conduct, and it was not incident to any investigatory need.

Federal courts have recognized that violation of departmental policy is probative of unreasonableness and supports the inference that the officers' conduct was not justified by any legitimate law enforcement need. Sepulveda v. Ramirez, 967 F.2d 1413 (9th Cir. 1992).

**G. The Error Was Not Harmless.**

By dismissing Plaintiff's claim at the pleading stage, the district court deprived Plaintiff of the opportunity to develop the factual record and present evidence regarding the lack of legitimate justification for the officers' conduct and their violation of policy. The Supreme Court and Ninth Circuit have made clear that such claims must proceed beyond the pleading stage where the plaintiff alleges gratuitous observation or recording of nudity without legitimate justification.

In its May 8, 2025 order, the district court dismissed without prejudice and stated that amendment "may nonetheless be futile," but it was "not certain" that Plaintiff would be unable to state a claim surviving the qualified-immunity defense, so leave to amend was granted. (ER-168-169). Plaintiff then filed a

substantially expanded First Amended Complaint adding detailed factual allegations and Tempe policy allegations, as well as a violation of Arizona law, A.R.S. §13-3019. (ER-85-87).

The later dismissal order acknowledged that the amended allegations did not alter the court's conclusion that Plaintiff stated a plausible Fourth Amendment violation. (ER-12-13). The court nonetheless dismissed with prejudice and directed entry of judgment. (ER-25). Given the court's own recognition of a plausible constitutional claim, and the fact that the dispute centered on whether qualified immunity could be resolved on the pleadings, dismissal with prejudice was too drastic. At minimum, the proper disposition was to allow the case to proceed beyond Rule 12(b)(6).

## II. **The Right Was Clearly Established; Qualified Immunity Was Improper.**

The right to bodily privacy from gratuitous observation or recording was clearly established at the time of the incident. Ioane v. Hodges, 939 F.3d 945 (9th Cir. 2018). Qualified immunity does not protect officers who violate clearly established constitutional rights.

The district court held at the first dismissal stage that the right at issue should be stated with specificity as "the right of an arrestee in police custody not to be filmed in a hospital room while she unconsciously exposes sensitive parts of her

naked body to police cameras." (ER-160). The court later reiterated the same qualified-immunity framework in dismissing the First Amended Complaint. (ER-13-14).

But the record reflected more than passive happenstance. Plaintiff alleged in the First Amended Complaint that, after being moved to a smaller room, the officers positioned themselves at the foot of the bed and later placed both cameras on a trash can near the foot of the bed. Moreover, the First Amended Complaint additionally alleged that both officers had a shelf near the head of the bed available where the cameras could have been placed without recording graphic images of Plaintiff's genitalia. (ER-86). In addition, Plaintiff alleged that the officers had no legitimate reason or justifiable purpose for the recording, quoting the district court's earlier order to that effect. Lastly, Plaintiff alleged the recording of Plaintiff, without her consent, in a hospital setting where she had a reasonable expectation of privacy, violated Arizona law. (ER-87, ER-89).

The district court nevertheless concluded the law was not clearly established because the cited cases were factually distinguishable and because Tempe policy did not clearly forbid the officers' conduct. (ER-14, ER-19). Yet, the First Amended Complaint alleged that Order 17.105 stated: "When possible, officers should avoid recording exposed areas of the body that could cause embarrassment or humiliation, such as exposed breast, groin, etc." and "Officers shall not record

while in a facility whose primary purpose is to provide medical and/or psychiatric services, unless responding to a radio call involving a suspect who is still present, or when officers are conducting investigatory follow up at the facility." (ER-86-87). Even if a policy violation does not itself establish a constitutional violation, those allegations support the lack of reasonable belief in the lawfulness of the conduct and strengthen the inference that no legitimate need justified the filming as alleged.

The court also recognized in its first dismissal order that "it is plausible to infer that making a video recording of an arrestee's naked body—even if it only shows what is already in plain view in a place where the officers have a right to be—is more intrusive than mere observation." (ER-158). The court further held that the scope and manner of the intrusion were plausibly not justified by an equivalent government interest. (ER-158). On these facts, at minimum, the district court should not have resolved qualified immunity against Plaintiff on the pleadings and foreclosed development of the factual record.

## III. <u>Additional State Law and Policy Violations.</u>

The officers' conduct also violated A.R.S. § 13-3019, which prohibits nonconsensual recording of a person's private parts in a place where they have a reasonable expectation of privacy. Arizona courts have recognized that the absence of probable cause and fabrication of evidence by law enforcement are grounds for

civil liability. Hansen v. Stoll, 636 P.2d 1236 (Ariz. Ct. App. 1981); Cullison v. City of Peoria, 584 P.2d 1156 (Ariz. 1978).

## IV. The Police Officers Violated A.R.S. § 13-3019, and Neither the Law Enforcement Exception, a "Surreptitious" Requirement, nor the District Court's Hospital Reasoning Excuse Their Conduct.

### A. Elements of A.R.S. § 13-3019.

A.R.S. § 13-3019(A) provides:

"It is unlawful for any person to knowingly photograph, videotape, film or digitally record or view another person without the person's consent while the person is either nude or is being undressed or dressed and is in a place where the person has a reasonable expectation of privacy."

Section 13-3019(C)(3) defines "place where a person has a reasonable expectation of privacy" to include: "A place in which a reasonable person would believe that he or she could disrobe in privacy, including but not limited to a bathroom, bedroom, changing room, fitting room, dressing room or locker room."

Section 13-3019(D) provides an exception for law enforcement officers: "This section does not apply to... (3) Law enforcement officers or correctional officers acting within the scope of their official duties."

### B. The Officers' Conduct Satisfies Every Element of the Offense.

The facts alleged in the complaint and supported by the record establish every element of A.R.S. § 13-3019:

1. **Knowingly Recording:** The officers intentionally activated and positioned their body-worn cameras to record Plaintiff while she was semi-conscious, handcuffed, and repeatedly exposed from the waist down.

2. **Without Consent:** Plaintiff was in no condition to consent, and there is no evidence of consent.

3. **While Nude or Being Undressed:** Plaintiff's genitalia was exposed due to her medical condition and the loose hospital gown.

4. **Place of Reasonable Expectation of Privacy:** A hospital emergency room, where a patient is being treated and undressed for medical reasons, is precisely the type of protected environment contemplated by the statute.

**C. The Law Enforcement Exception Does Not Apply.**

While A.R.S. § 13-3019(D)(3) provides an exception for law enforcement officers "acting within the scope of their official duties," this exception is not absolute. It presumes that the officer's conduct is justified by a legitimate law enforcement purpose. Here, the record is devoid of any legitimate investigative or evidentiary purpose for the officers' actions. The officers were not investigating a crime of a sexual nature, nor was there any claim that the recording of Plaintiff's genitalia was necessary for the prosecution of the alleged misdemeanor shoplifting offense.

The officers removed their body cameras from their persons and deliberately placed them in a position that maximized the recording of Plaintiff's exposed genitalia—conduct that is not only unnecessary for any legitimate law enforcement

purpose, but also directly contrary to Tempe Police Department policy and basic standards of decency. There is no logical or lawful argument that the video of Plaintiff's exposed genitalia could later be used to support a prosecution for shoplifting.

The alleged offense was a misdemeanor property crime, and Defendants offer no rational explanation that evidence relevant to the shoplifting charge could be gleaned from recording Plaintiff's nudity in a hospital bed. The officers' conduct was not incident to a search for contraband, the preservation of evidence, or the protection of officer safety. Instead, it was gratuitous, invasive, pornographic, and wholly unrelated to any legitimate law enforcement objective. In sum, Defendants offer no credible explanation why filming for hours Appellant's genitalia furthered their investigation.

To interpret the law enforcement exception so broadly as to cover the conduct at issue here would render the privacy protections of A.R.S. § 13-3019 meaningless in any custodial or medical context. Arizona law does not permit such an outcome. The exception must be construed narrowly, consistent with the statute's purpose of protecting individuals from nonconsensual recording of nudity in places where privacy is expected.

**D. The District Court Erred by Adding a "Surreptitious" Requirement.**

The district court's focus on whether the recording was "surreptitious" is misplaced and constitutes legal error. The court stated: "Plaintiff was openly recorded on police BWC, not *surreptitiously* surveilled with hidden cameras." (Emphasis supplied) (ER-20). However, A.R.S. § 13-3019 does not require that the recording be surreptitious for liability to attach. The statute's plain language criminalizes knowingly photographing, videotaping, filming, or digitally recording another person without their consent while that person is nude or exposed in a place where they have a reasonable expectation of privacy.

The statute does not limit its reach to hidden or secret recordings. The focus is on the lack of consent and the expectation of privacy, not on whether the recording was done secretly. The Arizona legislature could have limited the statute to "surreptitious" conduct, as some other states have, but it did not. The inclusion of "knowingly" and "without consent" as the operative elements demonstrates that the statute applies to both overt and covert recordings. Arizona courts have repeatedly held that courts must not read additional elements into a statute that the legislature did not include. See State v. Williams, 144 Ariz. 487, 698 P.2d 732 (1985) ("Courts will not read into a statute something which is not within the manifest intention of the legislature as gathered from the statute itself.").

Here, the officers' conduct falls squarely within the statute: they knowingly recorded Plaintiff's exposed genitalia, without her consent, while she was in a hospital bed—a place of heightened privacy. The fact that the recording was not hidden or secret is irrelevant under the statute. The district court's reliance on the lack of surreptitiousness as a defense is contrary to the plain language of A.R.S. § 13-3019 and Arizona law on statutory interpretation.

**E. The District Court Erred in Finding No Expectation of Privacy in a Hospital Setting.**

The district court further erred by concluding that a hospital setting is not a place where a person has a reasonable expectation of privacy. The court reasoned that "an individual does not generally have a reasonable expectation of privacy in a hospital room; nor was such an expectation reasonable here, where Plaintiff was placed on a hospital gurney and brought to two different curtained examination rooms, which were frequently open to the outside hallway, and where police, fire department, and hospital staff were free to—and frequently did—come and go." (ER-23).

This conclusion is contrary to the plain language and legislative intent of A.R.S. § 13-3019. The statute expressly protects individuals from being recorded while nude or exposed in "a place where the person has a reasonable expectation of privacy." The statutory definition in § 13-3019(C)(3) includes, but is not limited to, "a bathroom, bedroom, changing room, fitting room, dressing room or locker

room"—all places where people are commonly unclothed for personal or medical reasons.

A hospital emergency room, especially when a patient is semi-conscious, handcuffed, and undressed for medical treatment, is precisely the type of protected environment contemplated by the statute. The fact that medical staff or emergency personnel may enter and exit does not eliminate the patient's expectation of privacy from being recorded in a state of undress, particularly by law enforcement for non-medical purposes. The Arizona legislature's use of the phrase "including but not limited to" in § 13-3019(C)(3) demonstrates an intent to broadly protect privacy in any setting where a reasonable person would expect not to be recorded while unclothed.

Arizona courts have consistently held that statutory privacy protections are to be construed in accordance with their remedial purpose and should not be narrowly limited to the enumerated examples. The district court's restrictive interpretation would effectively nullify the statute's protections for some of the most vulnerable individuals—patients receiving emergency medical care—contrary to legislative intent.

Moreover, the officers' conduct here—deliberately recording Plaintiff's exposed genitalia while she was semi-conscious and unable to protect her privacy—falls squarely within the conduct prohibited by A.R.S. § 13-3019,

regardless of whether the hospital room was occasionally accessible to others. The expectation of privacy protected by the statute is not absolute seclusion, but rather the right not to be recorded in a state of undress without consent in a setting where privacy is reasonably expected.

**F. Policy and Precedent Support Plaintiff's Position.**

Tempe Police Department's own body camera policies (see, e.g., 17.105E9(g), 17.105E9(h), 17.105F5 require officers to avoid recording nudity, to respect privacy in medical settings, and to wear cameras in a manner that does not deliberately capture private areas. The officers' actions here were in direct violation of these policies, further demonstrating that they were not acting within the legitimate scope of their official duties.

Arizona courts have recognized that the absence of a legitimate law enforcement purpose removes the protection of the law enforcement exception. In analogous contexts, courts have held that officers who act outside the scope of their duties or in violation of policy are not shielded by statutory exceptions. See Cullison v. City of Peoria, 584 P.2d 1156 (Ariz. 1978).

Because the officers' conduct satisfies every element of A.R.S. § 13-3019 and does not fall within the law enforcement exception, and because the statute does not require surreptitiousness, and because a hospital is a place of reasonable privacy under Arizona law, Plaintiff has plausibly alleged a violation of Arizona

law in addition to her federal constitutional claims. The district court erred in failing to recognize the significance of this statutory violation and in dismissing Plaintiff's complaint.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that this Court reverse the district court's judgment, remand for further proceedings, and grant all other relief to which Plaintiff may be entitled.

## STATEMENT OF RELATED CASES

Plaintiff is not aware of any related cases pending in this Court.

RESPECTFULLY SUBMITTED this 26th day of May 2026.

Robert J. Campos
Robert J. Campos & Associates, P.L.C.

By: /s/ Robert J. Campos
Robert J. Campos
51 E. Lexington Ave.
Phoenix, Arizona 85012
Attorney for Plaintiff-Appellant Noor Jehangir